

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| **J.E. RICHARDS, INC.**<br>10401 Tucker Street<br>Beltsville, Maryland 20705<br><br>Plaintiff,<br><br>v.<br><br>**CLUNE CONSTRUCTION<br>COMPANY, L.P.**<br>10 South La Salle Street #300<br>Chicago, Illinois 60603<br><br>Serve:  CT Corporation System, Inc.<br>Registered Agent<br>4701 Cox Road, Suite 285<br>Glen Allen, Virginia 23060<br><br>Defendant. | Case No. 1:14CV566<br>JCC/IDD |

## COMPLAINT

COMES NOW, Plaintiff J.E. Richards, Inc. ("JER"), by and through its undersigned counsel, Peckar & Abramson, P.C., and for its Complaint against Defendant Clune Construction Company, L.P. ("Clune"), states the following upon information and belief:

### PARTIES

1. JER is a Maryland corporation in good standing with its principal place of business located at 10401 Tucker Street, Beltsville, Maryland. At all times relevant hereto, JER was authorized and licensed to conduct business in the Commonwealth of Virginia.

2. Clune is a Delaware limited partnership with its principal place of business located at 10 South La Salle Street, #300, Chicago, Illinois. Clune regularly conducts business in

the Commonwealth of Virginia and maintains an office at 1521 Westbranch Drive, Suite 500, McLean, Virginia.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court pursuant to the federal diversity of citizenship statute, 28 U.S.C. § 1332(a), because the Plaintiff is a citizen of a different state than the Defendant and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the Defendant conducts business in this jurisdiction and a substantial part of the events giving rise to the claim occurred in Sterling, Virginia.

## FACTUAL BACKGROUND

### The Agreement

5. This action arises out of Clune's breach of contract and failure to pay JER for work performed at a construction project known as the Columbia IBX Base Building, located at 1510 Moran Road, Sterling, Virginia (the "Project").

6. Clune was the general contractor for the Project. On April 24, 2012, Clune and JER executed Subcontract No. 424P001-021-COLO (the "Subcontract"), under which JER agreed to provide all labor, material, equipment, and supervision necessary to complete the electrical system at the Project, in consideration for payment in the amount of Three Million Thirty-Seven Thousand Twenty Dollars ($3,037,020.00). A true and correct copy of the Subcontract is attached hereto and incorporated by reference as Exhibit 1.

7. The Project drawings and specifications ("Specifications") required JER, *inter alia*, to install electrical switchboards with bussed connections of wires and conduits achieving a certified Underwriter Laboratories ("UL") rating of at least 65,000 amperes ("amps").

8.  Each switchboard integrated local breaker backup ("LBB") protection and Camlock locking devices to facilitate the bussed connection.

9.  The Specifications called for the owner of the Project ("Owner") to select the manufacturer of switchboards and all related electrical equipment prior to JER's involvement with the Project.

10. Under the Subcontract, JER was required to order and obtain the switchboards and related equipment from the Owner's specified manufacturer.

11. The Owner and Clune warranted that the switchboards and electrical equipment would fulfill all requirements set forth in the specifications, including the requirement for a UL rating of 65,000 amps.

12. In fact, the manufacturer of the LBB breakers and Camlock devices had not tested, and was unable to certify, that the electrical equipment could meet the UL rating called for in the Specifications.

The Change Order Work

13. During the coordination phase of the Project, JER informed Clune that the specified manufacturer of electrical equipment could not certify the minimum UL rating for switchboards.

14. Clune orally directed JER to obtain and install additional switchboards with separately mounted LBB breakers and Camlocks distinct from the primary switchboards (the "Change Order Work").

15. The Change Order Work was a means of disbursing the electrical current flowing through the switchboards and ensuring that amperage remained below the 65,000 amp threshold for any given switchboard.

16. Clune instructed JER to proceed immediately with the Change Order Work and to submit an additive change order request for reimbursement on a time-and-materials basis once the work was completed.

17. In reliance on Clune's agreement to pay for the Change Order Work, JER procured several thousand dollars worth of additional switchboards and copper conduit wire and furnished substantial additional labor performing the Change Order Work.

18. JER fully and correctly performed the Change Order Work.

19. On April 19, 2013, JER submitted Change Order Proposal No. 37 (the "Change Order"), requesting an increase in the Subcontract price by One Hundred Thirty-Eight Thousand Two Hundred Fifty-Nine Dollars ($138,259.00) for the Change Order Work. A true and correct copy of the Change Order is attached hereto and incorporated by reference as Exhibit 2.

20. When Clune disputed the labor rates applicable to the Change Order Work, JER submitted revised Change Order No. 37R5 (the "Revised Change Order"), dated June 11, 2013, and seeking an increase in the Subcontract price by One Hundred Thirty-One Thousand Three Hundred Forty-Eight Dollars ($131,348.00). A true and correct copy of the Revised Change Order is attached hereto and incorporated by reference as Exhibit 3.

The Contingency Funds

21. Clune's prime contract with the Owner provided contingency funds to pay for, *inter alia*, unforeseen changes in the Project's scope of work (the "Contingency Funds").

22. At the time that JER submitted the Revised Change Order, Clune had access to the Contingency Funds and could have used the Contingency Funds to pay JER for the Change Order Work.

23. Clune declined to use the Contingency Funds to compensate JER, instead returning the money to the Owner.

24. Clune advised JER that Clune had made a business decision not to involve the Owner in the Change Order Work and, instead, to compensate JER out of its own pocket for the Change Order Work.

25. Despite accepting the additional switchboards and electrical equipment installed by JER, Clune later refused to submit a change order request to the Owner in connection with the Change Order Work.

26. Despite demand, JER remains unpaid by Clune in the amount of One Hundred Thirty-One Thousand Three Hundred Forty-Eight Dollars ($131,348.00) of valuable labor and materials related to the Change Order Work.

27. JER has satisfied all conditions precedent to maintaining this action.

## COUNT I
### (Breach of Contract)

28. JER restates and incorporates the allegations in Paragraphs 1 through 27 as though fully set forth herein.

29. The Subcontract is a valid and binding contract between Clune and JER.

30. Clune directed JER to perform the Change Order Work and to provide materials and labor outside of the original scope of the Subcontract.

31. JER agreed to perform the additional work upon Clune's express promise of compensation to JER on a time-and-materials basis.

32. The cost of time, material and allowable mark-up related to the Change Order Work was One Hundred Thirty-One Thousand Three Hundred Forty-Eight Dollars ($131,348.00).

33. JER timely and correctly performed all of its obligations under the Subcontract, including the Change Order Work.

34. Clune breached the Subcontract by failing to pay JER for work the Change Order Work.

35. JER has suffered real and substantial damages of no less than One Hundred Thirty-One Thousand Three Hundred Forty-Eight Dollars ($131,348.00), as a direct result of Clune's breach of the Subcontract.

WHEREFORE, Plaintiff J.E. Richards, Inc. respectfully requests that this Honorable Court enter judgment in its favor and award monetary damages of no less than $131,348.00, pre-judgment and post-judgment interest, costs, and all other relief that the Court deems just and necessary.

## COUNT II
### (Alternative Claim for Unjust Enrichment – Quantum Meruit)

36. JER restates and incorporates the allegations in Paragraphs 1 through 35 as though fully set forth herein.

37. At Clune's directive, JER fully and faithfully provided Clune valuable services and materials in relation to the Change Order Work, in the aggregate amount of One Hundred Thirty-One Thousand Three Hundred Forty-Eight Dollars ($131,348.00).

38. Clune accepted the benefits of the Change Order Work with knowledge that JER expected payment in return for performing the work.

39. Despite demand, JER remains unpaid for the full amount of Change Order Work.

40. Clune approved, accepted, and benefitted from the Change Order Work.

41. It would be inequitable and against good conscience to permit Clune to retain the benefits of the Change Order Work without compensating JER.

WHEREFORE, Plaintiff J.E. Richards, Inc. respectfully requests that this Honorable Court enter judgment in its favor and award monetary damages of no less than $131,348.00, pre-judgment and post-judgment interest, costs, and all other relief that the Court deems just and necessary.

Dated: May 14, 2014

Respectfully Submitted,

**J.E. RICHARDS, INC.**

By Counsel

_____
Stephen M. Seeger, VSB No. 431258
Anthony J. LaPlaca, VSB No. 84090
Peckar & Abramson, P.C.
2055 L Street, NW
Suite 750
Washington, D.C. 20036
Tel: (202)-293-8815
Fax: (202)-293-7994
E-mail: seeger@pecklaw.com
         alaplaca@pecklaw.com
*Counsel for Plaintiff J.E. Richards, Inc.*